JAMES V. SCHENCK, Appellant, v. DANIEL P. INGRA-HAM, Jr., and others, Respondents.*

*Receiver — settlement of his accounts — how reviewed — who may apply to vacate such settlement.*

Where it is sought to review proceedings had on the settlement of a receiver's accounts, on the ground that claims allowed and paid out of funds in the hands of the receiver, under an order of the court, are fictitious and unfounded, the better proceeding by a creditor of the fund is to apply to be made a party to the suit in which the order was made, and to have such order vacated; for in such proceedings the court has a wider discretion and greater power for relief than in an independent action, depending for its success upon satisfactory proof of fraud.

It is sufficient, to maintain the application in such case, that the creditor applying to intervene in the proceedings is entitled to participate in the fund, in however small a degree it may be.

APPEAL from an order denying a motion to have certain orders directing the distribution of funds in the hands of a receiver, and discharging such receiver, set aside and vacated, and from a judgment dismissing plaintiff's complaint, in an action brought to set aside an alleged fraudulent settlement of a receiver's accounts, and for the satisfaction of plaintiff's judgment by such receiver. The defendant Ingraham was appointed a receiver in an action to settle up certain partnership affairs, and paid, as was claimed, exorbitant fees to his counsel, and retained an improper sum for his own ser-

* This case was decided at the March term, 1875.

vices, which acts were done, as the plaintiff claimed, in pursuance of a fraudulent agreement between the receiver and his counsel.

The plaintiff and one John R. Ryon, now deceased, recovered a judgment against James A. Miller and Catharine Loeb, on the 12th day of September, 1870, for $2,954.71. They were then, and previously had been, partners in business, keeping the Glenham hotel in the city of New York. An execution upon the judgment was issued against the property of the defendants in the judgment, and returned unsatisfied.

In December, 1869, Catharine Loeb sold her interest in the business and property of the firm to Dell P. Peters, and the other partner, James E. Miller, thereupon commenced an action to settle the partnership affairs. The defendant Daniel P. Ingraham, Jr., was appointed receiver of the property of the firm, on or about the 16th day of December, 1869, and on the 25th of January, 1870, he sold the same, and received, as the proceeds of the sale, the sum of $8,415.04. Out of this amount, $448.98 were paid as wages to persons employed in the business of the hotel; $500 to the superintendent; $816 to the collector of internal revenue, and the residue was divided, under an order of this court, between the receiver, his counsel, the counsel for the preceding receiver, Peters, and the counsel of the defendants in the action brought to settle the partnership affairs, the total amount so divided and distributed between the receiver and his counsel and the counsel for Peters being the sum of $6,218.

The creditors, claiming this division to have been made pursuant to the terms of a fraudulent agreement existing between the receiver and his counsel, commenced an action on the judgment recovered against the partners, to annul it and have the judgment paid out of the proceeds of the property. Issue was joined in that action, and on a trial being had the complaint was dismissed. The plaintiffs appealed from the judgment on that decision.

Ryon died in March, 1873, and Schenck continued the action as survivor.

After that dismissal of the complaint, the surviving plaintiff in the judgment applied by petition, on motion, to have the order under which the distribution complained of was made, and the order discharging the receiver, set aside and vacated.

The motion was denied, and the applicant appealed from the order denying it.

*M. H. Ellis* and *Adam C. Ellis*, for the appellant.    The order making the allowances of $6,218 to these defendants for services, is a palpable fraud; likewise the order discharging Ingraham as receiver.    If the power exists, the judgment should be reversed, as the justice did not pass upon the merits.    (*The Artisans' Bank* v. *Treadwell,* 34 Barb., 553.)    The court, in the exercise of its inherent power, and on its own motion, can revoke these orders. (*Baldwin* v. *The Mayor, etc., of N. Y.,* 42 Barb., 550; *Lowber* v. *The Mayor, etc., of N. Y.,* 5 Abb. Pr., 487.)    The plaintiffs could not have petitioned in the original action of *Miller* v. *Loeb & Peters.*    It is only after decree in such actions that creditors are *quasi* parties.    (*Hubbard* v. *Guild,* 2 Duer, 687.)    "If the action had proceeded to a decree directing accounts to be taken, and all creditors to be called in in the usual form, the mode of proceeding by petition might be proper."    (Id.)    "Where the master has admitted the claim of a creditor, the latter becomes *quasi* a party to the suit; it is not, however, necessary to bring him before the court by supplemental bill."    (Daniells' Ch. Pl. and Pr., vol. 2, p. 1410 [1st Am. ed.].)    The fees of the defendant Ingraham should be determined by reference to those fees allowed by law for like services; he is within the equity of provisions applicable to such cases.    (*Innes* v. *Purcell,* 2 N. Y. S. C., 538; *Howes* v. *Davis,* 4 Abb. Pr., 71; 2 R. S., 93, § 58.)    If he acts as counsel in the business of the receivership, he is not entitled to special compensation beyond taxable counsel fees.    (*Matter of the Bank of Niagara,* 6 Paige, 213.)    The Court of Appeals has decided that one rule of compensation for the attorney to the record is, in the absence of an express agreement, the particular sums which the Code specifies in different periods of the litigation.    (*Rooney* v. *Second Avenue R. R. Co.,* 18 N. Y., 373; *Crofut* v. *Brandt,* 13 Abb. Pr. [N. S.], 128; *Griffin* v. *Barney,* 2 N. Y., 372.)    The plaintiffs, being judgment creditors who have exhausted their remedy at law, can proceed by complaint (in the nature of creditors' bill under former practice) to reach equitable assets of the judgment debtors, or their property fraudulently held by third persons, and can ask for the cancellation of the fraudulent orders

in such an action. (2 R. S., 174, §§ 38, 39; *Scouten* v. *Bender*, 3 How. Pr., 185; *Burns* v. *Morse & Platt*, 6 Paige, 108; 3 Black. Com., 44; *Shaw* v. *Dwight*, 27 N. Y., 244; *Hubbard & Willis* v. *Guild*, 2 Duer, 685; *Dobson* v. *Pierce*, 12 N. Y., 156; *Ochsendein* v. *Papalier*, 6 Eng. R. [Moak's notes], 579.) In proceedings supplementary to execution, the receiver can recover property held adversely to the judgment debtor only by action. (Code, § 299.) If a creditor's bill will not lie, the remedy is by complaint in the nature of a bill of review or original bill. The complaint in this action can be so regarded under the general prayer. (Barb. Ch. Pr., bk. 1, chap. 12, § 8; Daniell's Ch. Pl. and Pr., vol. 1, p. 357 [1st Am. ed.]; 1 Barb. Ch. Pr., 34.) Peters was a stranger to the fund. He purchased Loeb's interest only, and such purchase gave him no rights except such as she might have had after paying all copartnership debts and accounting with Miller, the remaining partner. (*Martin* v. *Wagener*, 1 N. Y. S. C., 509; *Dayton* v. *Wilkes*, 5 Bosw., 655; *Menagh* v. *Whitwell*, 52 N. Y., 146.)

*John E. Burrill*, for the respondent Ingraham. In the absence of evidence to show that the allowances to the receiver and the other parties were excessive, or were improperly procured, the court must presume that they were fair and reasonable and properly procured. The amount of the allowances, so long as they did not exceed the limit fixed by law, was in the discretion of the court which made the orders, and the propriety of such orders could not be reviewed on an appeal in the action, much less could their propriety be reviewed collaterally. Even if the court can inquire into the validity of these proceedings in this manner, the plaintiff has no interest in the subject-matter, and no standing in court sufficient to entitle him to the relief claimed. The plaintiff has no lien on the property, the proceeds of which went into the hands of the receiver. Plaintiff's judgment was not recovered until after the receiver had been discharged. This action was not commenced until two years after such discharge. This is not a creditors' bill, because the judgment debtors are not parties, and the only interest which the plaintiff has is through Miller and Loeb, who are not before the court. If the plaintiff could maintain any action, it should have been commenced on behalf of himself and all other creditors of

Miller and Loeb. If it should be adjudged that the moneys paid to the receiver and his counsel were improperly paid, the only decree the court could make would be to compel the receiver and his counsel to pay back into the treasury of the court such moneys, and when thus paid back, they would be distributed among all the creditors of the firm of Miller and Loeb, whose property produced the moneys. If the plaintiff can maintain this suit, then every other creditor of Miller and Loeb can maintain a like suit.

. *Nelson Smith*, respondent in person.

DANIELS, J.:

On the trial of the judgment creditors' action, the only evidence given of the fraudulent nature of the distribution made of the proceeds derived from the sale, was the proceedings themselves by which it was accomplished, and that was considered insufficient by the court to entitle the plaintiffs in that action to the relief they sought. In this conclusion the learned court was probably correct. For, while those proceedings subjected the parties engaged in them to very grave suspicions that they were collusive and fraudulent in their nature, they probably did not warrant the conclusion with that degree of certainty which the law justly requires to establish the existence of fraud. That cannot be presumed against any person without satisfactory proof. And the evidence of its existence must be reasonably certain, before that can be deemed to be established. That which was given upon the trial of the creditors' action was not of so cogent a character, and for that reason the orders made were a proper defense to the suit. As long as they could not be vacated or annulled for collusion or fraud, they were conclusive against the right of the plaintiffs to the relief they applied for in a collateral action. In the condition in which the proof left the case, they could not be reviewed nor corrected by means of the action which was brought. The evidence should have gone further, for the purpose of showing, if that could have been done, that the claims allowed and paid out of the proceeds of the sale were in whole or in part fictitious and unfounded. That would have so far confirmed the suspicion awakened by the proceedings themselves, as to have rendered it the duty of the

court to disregard them, as a mere device or fraud, invented for misappropriating what justice required should be paid to the creditors of the firm whose affairs it was the object of the action to settle.

In dismissing the action of the judgment creditors, the learned judge, before whom the trial was had, suggested that the proper proceeding to be taken for redressing the wrong complained of, was that of a motion to vacate the orders. And, accordingly, an application in that form was afterward made by the surviving judgment creditor. It was one which he had the right to make, and it was the most appropriate and practical mode in which the complaint made could be considered and decided. For, in a proceeding of that nature, the court has a wider discretion, and much greater power for relief, than in an action dependent for its success upon satisfactory proof of fraud.

The judgment constituting the foundation of the application, was not recovered until the fund had been distributed, and the receiver discharged. But as the action in which it was recovered was against the firm carrying on the business of the hotel before Loeb sold out to Peters, it may reasonably be inferred that it was for a debt owing from the firm. And that was enough to give the creditors recovering it an interest in the property and assets of that firm. If the action to settle the partnership affairs of Miller and Loeb had proceeded to a decree, these, as well as the other creditors, would have been brought in under it to prove their claims, and share in the distribution of whatever fund might have been derived from the assets. That right gave them an interest in the action prosecuted by Miller. And it was sufficient to entitle them, as creditors, to become parties to the proceeding whenever the proper protection of their interests might require that to be done. The transfer made by Loeb to Peters of her interest in the business and effects of the partnership, did not change the right of the creditors in this respect. For they were entitled to payment out of the partnership property before any thing could be properly claimed by the individual members of the firm. And the transfer to Peters merely gave him the right which Loeb would otherwise have had, if that had not been made. (*Buchan* v. *Sumner*, 2 Barb. Ch., 166.) The fact that Peters may have been induced by the fraud of Loeb, as

to the condition of the business, to purchase her interest, could not increase the amount of it. For what he acquired by the purchase was merely what she had the power to sell, and nothing more than that. It was merely her interest in the property of the firm after the payment of its debts. If she fraudulently represented its extent, the remedy was against her individually for the loss occasioned by the deception. It could not increase his rights against the property or assets of the firm. The creditors had the right to have them applied to the payment of their debts, so far as they might be necessary for that purpose, and the balance only which might afterward remain was all that could be rendered divisible between the members of the firm.

It is not essential to the principle involved, that the particular creditor applying to intervene in the proceeding may be entitled to receive but a small amount of the fund to be divided. The right to participate in the fund at all, is sufficient to maintain the application, where it may be in danger of being misapplied by the conduct of the parties before the court. It was the duty of the partner, by whom the suit was instituted, to close up the affairs of the firm, to secure the application of its property first to the payment of its debts. If that duty was disregarded, the only alternative which a creditor had, was to institute such measures as would enable him to secure protection for himself. And the proper mode of doing that in the proceedings which had been taken, was to apply for liberty to become a party, to have the orders vacated which had been made, and the claims allowed against the fund readjusted. (*Gould* v. *Mortimer*, 26 How., 167; *Dwight's Case*, 15 Abb., 259.) Such an application is within the provision made by section 173 of the Code, allowing the court to amend proceedings, process and pleadings by adding parties, whenever justice may require that to be done. The application, though not in terms for that relief, included it in substance. It was nominally to vacate the orders by which what was claimed to be an unauthorized distribution of the partnership fund was allowed to be made. But as that could only be accomplished by the applicant first becoming a party to the action, it necessarily included that relief. The end applied for included all as means, which was required for its accomplishment.

Nine hundred and fifty dollars of the fund derived from the

receiver's sale of the partnership property were allowed by one of the orders, and paid by the receiver to Ira Shafer, as counsel for Peters, who had been receiver of the partnership effects. He was continued in that capacity but a few days at most, and he paid his counsel for his services on the motion upon the determination of which his appointment was made. This payment was conceded in the affidavit made by Ira Shafer to oppose the creditors' application. And he then proceeded to state generally the services performed by him during the continuance of both receiverships, but failed to show any specific thing done for Peters justifying the payment of the $950 made in his behalf under the order. So far as that item is involved, no just demand was shown for its payment. Peters, as receiver, had the property in charge but a few days, and Ingraham, as his successor, only from the sixteenth of December to the twenty-fifth of the following January, when it was sold and converted into money. And, during most of the time, Ira Shafer swears that he was engaged about the litigation, and that his services were worth at least $5,000. What litigation was prosecuted or defended, beyond that of the suit to close up the affairs of the partnership, and incident to the removal of one receiver and the appointment of another in his place, and an application by a claimant of some of the property for leave to sue the receiver for it, nowhere appears. And as the complaint in the partner's action does not seem to have been even answered, or the suit seriously contested, there could not be an opportunity for much litigation in the action to settle the partnership affairs, nor in the proceeding to change the receiver, which Peters does not seem to have seriously opposed. The application for leave to sue the receiver must also have been a simple matter, requiring but little time or attention in opposing it. For these services, during the period mentioned, as they are described in the affidavit of Ira Shafer himself, he received from the receiver, out of the proceeds of the sale of the partnership effects, not only the sum of $950, but the further sum of $1,900, under the order allowing the payments.

In this simple proceeding, requiring no more attention than the receiver himself was competent to give to the business of his trust, Nelson Smith was also employed on his part, and from his affidavit it appears that the service he performed was to institute pro-

ceedings to punish Ryon for a contempt for attaching part of the partnership property in the receiver's possession. How much or what was done for that purpose was not mentioned, and from that circumstance and the nature of the proceeding itself, it may safely be presumed to have been neither laborious nor long continued. He also alleges that he performed divers other services, and paid out divers disbursements in relation thereto, and was employed a very large portion of his time during the continuance of the receivership. But what he did was not stated by him beyond the services already mentioned. A general statement of this nature can form no proper basis for the payment of a large sum of money, where it has been in no way supported by facts warranting the conclusion. It cannot reasonably be inferred from it, that any important service was performed, or any considerable disbursement made. But as the services performed in the proceeding taken for the punishment of the attaching creditor were specifically mentioned, that may be presumed to have been the most important of all that was done by Nelson Smith. And even that could not have been either intricate or laborious. For this, and the divers services and disbursements left undescribed, the receiver paid him the sum of $1,468. It was entirely unwarranted, according to the facts presented by the affidavit, considered in the most favorable view which can be taken of them. Besides that, no reason whatever appears, rendering the employment of both Ira Shafer and Nelson Smith either necessary or proper for the purpose of aiding the receiver in the management and protection of the property committed to his custody. There seems to have been but little need of counsel at all, but whatever there may have been, either one of these legal gentlemen would have been sufficient for the services required. Both certainly were not necessary, and for that reason, compensation to one of them out of the proceeds of the partnership effects, should certainly have been denied.

The receiver himself was allowed $1,900 for his commissions and services, in addition to the exorbitant amounts expended for the assistance of his counsel. What he did justifying such an appropriation of the proceeds, which came into his hands from a sale made by an auctioneer, who reserved his own commissions and expenses, of property under the superintendence of another person,

who was paid $500 for his services, was not clearly made to appear. He stated in his affidavit, that as receiver he was at the hotel daily where the property was kept, and the business was carried on; that an inventory was made by him and under his direction; that he used diligent efforts to make the property productive, and was sued for $10,000 by a claimant for selling the property. What became of the suit, beyond its mere commencement, was not stated. And if it was abandoned, as it probably was, as long as nothing more was said about it, the suit could have formed the subject of no severe or very responsible service. The other services mentioned were precisely those which, as receiver, he must have expected he was required to perform. Similar services are always required of receivers of personal property. And it is for their performance that they are allowed their commissions. They can form no foundation for such an allowance as was made in this case. This property was brought into the custody of this court to secure its protection, and the division of its proceeds among those who should, in the course of the litigation concerning it, be finally found entitled to participate in their distribution. The object of the law in allowing the court to take it in charge, was to prevent it from being wasted, destroyed, or squandered, in order that a proper disposition of its proceeds could be made among the persons having lawful claims upon them. That has been completely frustrated and defeated in the present instance. The fund designed for creditors and others interested in the property producing it, in this instance, has been entirely exhausted by the claims allowed to the receiver and his counsel. And it is confidently claimed that this court shall, after all that has been done, maintain the proceedings as valid through which that has been accomplished. A result of that character would justly involve the administration of the law in the most unqualified and deserved condemnation. For, under the forms of law, it would protect and sanction the most apparent injustice. No lapse of time less than that prescribed for the commencement of actions, would either justify or excuse the court for a failure to vacate and annul proceedings which appear to have been resorted to as, and successfully rendered, the means of such transparent injustice. Its power in this respect is ample, and it would be unworthy of the name of a court of justice, if this distribution

of the property put into the hands of its officer for preservation and protection, should be permitted to stand. (*O'Mahoney* v. *Belmont*, 37 N. Y. Supr. Ct., 223.)

The order appealed from should be reversed with $10 costs besides disbursements, and an order entered making the appellant a party to the proceedings taken to distribute the proceeds of the partnership effects, and for *pro rata* payment out of such proceeds of the judgment recovered, after payment to the receiver of his commissions and a proper allowance for the reasonable value of the legal services performed for the receivers for not exceeding one counsel, and requiring the balance of the proceeds to be paid into court for distribution under its direction ; and vacating the orders discharging the receiver and providing for the distribution already made. An order should also be entered affirming the judgment, without costs.

DAVIS, P. J., concurred.

Ordered accordingly.